### 19100

SOUTH CAROLINA STATE PORTS AUTHORITY, Respondents, v. Ursula S. KAISER, and also all other persons unknown claiming any right, title, estate, interest in or lien upon the Real Estate described in the Petition herein, of whom Ursula S. Kaiser, is, Appellant.

(176 S. E. (2d) 532)

*Messrs. Pritchard, Myers, Morrison & Bloom,* of Charleston, *for Appellant,*

*Messrs. Grimball & Cabaniss,* of Charleston, *for Respond-
ent,*

September 3, 1970.

BUSSEY, Justice.

This is a condemnation case in which the respondent, South Carolina State Ports Authority, seeks to acquire a small lot of land in the City of Charleston, the property of appellant, Ursula S. Kaiser. For simplicity, we shall refer to the condemnor as the Authority, and the condemnee as Mrs. Kaiser. Action was instituted under the authority of Sec. 54-15 of the 1962 Code of Laws pursuant to the procedure provided for in the "Public Works Eminent Domain Law", Secs. 25-1, *et seq.* of the Code. The Authority sought immediate possession and vesting of title by complying with Code Secs. 25-108 and 25-109. Mrs. Kaiser in her return asserted that there was no necessity or need for taking her property and that hence, the Authority had no right to condemn, and she prayed for a jury trial as to just compensation, if the court determined that the condemnor had the right to condemn. She raised no question as to the right of the Authority to take title to and possession of the subject property prior to judgment.

The matter, pursuant to Code Sec. 25-111, then came on for hearing before the Resident Judge of the Ninth Judicial Circuit for the purposes, *inter alia,* of (a) determining the validity of the proceeding, and (b) designating the proced-

ure to determine the amount of compensation to be paid and to whom paid, whether by reference to a special master or by trial before a jury.

At the hearing, Mrs. Kaiser, through her counsel, requested that "live testimony" of the witnesses be taken. The judge refused this request and heard the case on affidavits submitted by the respective parties, and no transcript was made of the hearing. Mrs. Kaiser at the hearing withdrew her request for a jury trial on the matter of compensation and expressly requested that such issue be referred to a special master. The Authority then took the position that it wished a jury trial. After the hearing, the court entered its order holding, *inter alia,* that the proceedings were valid and that the amount of compensation should be determined by trial before a jury.

The factual situation is substantially as follows. The Authority is the owner of an office building located at and known as No. 1 Vendue Range in the City of Charleston, near the Cooper River waterfront. The property sought to be condemned is a lot at the southeast corner of Vendue Range and Prioleau Street, measuring twenty feet, more or less, on Vendue Range, and sixty-one feet three inches, more or less, on Prioleau Street. Such property is immediately to the west of the Authority's property at No. 1 Vendue Range. On Mrs. Kaiser's property there stood a building which, as early as 1960, was in a bad state of repair. The westernmost portion of the Authority's building and the easternmost portion of Mrs. Kaiser's building were connected. According to the Chief Engineer of the Authority, the easterly wall of the Kaiser property served three functions for the No. 1 Vendue Range building: (1) It tied and joined the north and south walls, giving them support and stability as well as support and stability to the roof; (2) it protected the inside of No. 1 Vendue Range from the elements, and (3) provided vertical support for the second floor beams.

The record reflects that as early as 1960 Mrs. Kaiser wished to demolish her building and there is evidence to the effect that she was requested or ordered to do so by the City of Charleston. A controversy developed between her and the Authority as to what arrangement would be made to protect and support the Authority's building if Mrs. Kaiser's building were demolished. Mrs. Kaiser commenced an action against the Authority in which she asserted that the Authority had no rights in the easterly wall of her building and prayed that the court direct the Authority to disconnect and remove its building from the easterly wall of her building. The Authority entered a general denial and asserted that the wall in question was a party wall. Such action is still pending and the status of the wall yet undetermined.

In October 1968, Mrs. Kaiser's husband, who is handling the property for her, announced their intention of demolishing the building on the property, notwithstanding any rights the Authority had or the effect that such demolition would have upon its property. The Authority offered to purchase the Kaiser property, but Mrs. Kaiser refused to even discuss such. In January 1969, she commenced demolition of her building, including the eastern wall, and this proceeding in condemnation followed. Since the Authority took possession in this proceeding, the eastern wall has been rebuilt and shored with wooden beams, the bases of which rest on the Kaiser lot. The northern wall of the Kaiser building has been reinforced and left standing to give support to the eastern wall. Photographs showing the use being made of the Kaiser property by the Authority were offered as exhibits.

At the commencement of this proceeding the Authority's office building was under lease to the United States (Army Engineers), but the Authority, under the terms if the lease, was bound to replace or repair the western or common wall should such be removed or damaged as a result of the demolition of the Kaiser building. Evidence on behalf of the

Authority was to the effect that it had under consideration plans to build its main office building on or in the general vicinity of the Kaiser property and No. 1 Vendue Range; that it was also considering alternate sites; and that the Kaiser property would eventually be used either for the general office building, an auxiliary to such, or for some other appropriate port use, but that in the meantime, the Kaiser property was urgently needed by the Authority to stabilize, support and protect its present building at No. 1 Vendue Range. Evidence on behalf of the Authority was also to the effect that the protection and support of its present building would be prohibitively expensive without the acquisition of the Kaiser property.

The only evidence offered on behalf of Mrs. Kaiser was the affidavit of her husband. He conceded that the Authority's building was in part supported by the east wall of the Kaiser building. He asserted, however, his belief that no part of the Kaiser property was reasonably necessary for the support and protection of the Authority's building; that if any portion of the property was needed, only a small portion was required; that the Authority planned to tear down its building as soon as its lease with the United States Government expired, with the result that a condemnation in fee was unnecessary and that any need for the Kaiser property could be served by a short term lease which Mrs. Kaiser was prepared to give for a reasonable consideration. It would appear that no such offer was made prior to the condemnation proceeding. Mr. Kaiser further asserted his belief that the Authority had no firm plans for the permanent use of the property and his view and belief that the Authority already owned abundant property in the vicinity to serve any needs it might have.

Here Mrs. Kaiser first asserts that she was deprived of due process of law guaranteed to her by both State and Federal Constitutions, in that the judge should have held a full hearing with the witnesses being examined and cross examined on the issues raised by the

petition and return. It is, to say the least, extremely doubtful whether this question was properly preserved below or presented by a proper exception here, but, in any event, we think there is no merit in the contention for several reasons. There is no showing in the record, or even in the brief of appellant, as to precisely what additional facts, if any, she proposed to develop upon the oral examination of her one witness or the cross examination of the Authority's one witness. In brief, there is no showing of any prejudice. The statute under which the hearing was held does not specify the procedure for the reception of evidence.

"The guaranty of due process, viewed in its procedural aspect, requires no particualr form of procedure." 16 Am. Jur. (2d) 943, Constitutional Law, Sec. 549.

It is next contended that the taking was not for any purpose enumerated in Code Sec. 54-15, which section confers the power of eminent domain upon the Authority. We fail to see where this issue was raised in appellant's return below and, accordingly, such issue has been waived. Sec. 25-114 of the Code. But aside therefrom, we are of the view that there is no merit in the contention even if the issue had not been waived.

The primary contention made by the appellant below, and here, is that there was no necessity for the condemnation of the property. She concedes that,

"The rule in this State is that the decision of the question of necessity lies with the one to whom the State has delegated the authority to take property for a public use and is not subject to review by the Court in the absence of fraud, bad faith, or clear abuse of discretion." *Sease v. City of Spartanburg,* 242 S. C. 520, 131 S. E. (2d) 683, 686 (1963).

Appellant does not contend that there was any fraud, but insists that the facts show bad faith and abuse of discretion on the part of the Authority. As showing such, she relies on the long pending legal action between the parties as to

the wall in question, the admission by the Authority that its plans for the future use of the property are not yet definite and that there is no immediate need for the property, other than the support and protection of its present building and her willingness to give a short term lease of a portion of her property to allow the Authority to protect its building. The lower court found that there was no evidence of fraud, bad faith, or clear abuse of discretion on the part of the Authority, and we agree.

The long pending action with respect to the common wall between the parties, rather than showing any bad faith or caprice, shows that the Authority had been concerned for many years about the potentially adverse consequences to its property should the Kaiser building be demolished in its entirety. The vague offer of a short term lease was made after the proceedings started and can have no bearing upon the good or bad faith or discretion of the Authority at the time of instituting the proceeding. There being immediate need and necessity for the condemned property, the mere fact that plans for contemplated future uses of the property were not yet firm or definite would be insufficient to show either bad faith or abuse of discretion.

Lastly, the appellant contends that there was error in ordering that the amount of compensation be determined by a jury trial, appellant having specifically asked for trial by a special master. Sec. 25-117 of the Code contains the following provision:

"The court, at the time of such hearing, shall, unless a jury trial is demanded, appoint a special master to fix the amount of damages and compensation for the taking and condemnation of the property described in the petition and the persons entitled thereto and to report thereon to the court."

Such section is silent as to who may demand a jury trial. Sec. 25-126 of the Code, however, is, we think, explicit. We quote as follows:

"*Jury trial.*—In the event, in and by a return made pursuant to the notice provided for in § 25-111, any person having an interest in or lien upon the property sought to be acquired shall demand a jury, the court shall, in lieu of referring the matter to a special master, order that the cause be entered for trial before a jury * * *."

From the foregoing language it is clear that a jury trial may only be obtained "in and by a return" to the notice provided for in Sec. 25-111, and by one who has an interest in or lien upon the property at the time. The Authority, naturally, filed no return to its own notice and at the time had no interest in or lien upon the property. It follows that the lower court was in error in ordering a jury trial at the instance of the Authority and over the objection of Mrs. Kaiser.

The judgment below is, in accordance with the views herein expressed, affirmed in part and reversed in part.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.