SOUTH CAROLINA STATE PORTS AUTHORITY (Case No. 81-CP-10-3400), Respondent, v. HOLSTON LAND COMPANY, INC., D & G Development Corporation, and all Other Persons Unknown Claiming Any Right, Title, Estate In or Lien Upon the Real Estate Described, Respondents, of which Holston Land Company, Inc., is Appellant. HOLSTON LAND COMPANY, Inc. (Case No. 81-CP-10-3455), Appellant, v. SOUTH CAROLINA STATE PORTS AUTHORITY, Respondent.

(318 S. E. (2d) 265)

Supreme Court

*Augustine T. Smythe, Buist, Moore, Smythe & McGee,* Charleston, *for appellant, Holston Land Company, Inc.*

*William H. Vaughan, Jr., Grimball, Cabaniss, Vaughan & Robinson,* Charleston, *for respondent South Carolina State Ports Authority.*

Submitted April 18, 1984.

Decided July 16, 1984.

JOSEPH R. MOSS, Acting Associate Justice:

This is a condemnation case. Appellant, Holston Land Company, Inc., contends the trial court erred in allowing respondent, South Carolina Ports Authority, to condemn Drum Island, located in Charleston Harbor, for the purpose of utiliz-

ing it as a depository for spoil material dredged from adjacent shipping channels. We disagree and affirm.

Pursuant to the River and Harbor Acts of 1940 and 1954, the U. S. Army Corps of Engineers periodically dredge the channels of Charleston Harbor to maintain an adequate depth for the Harbor's international shipping traffic. These Acts also oblige the Ports Authority to furnish the Corps of Engineers suitable disposal areas for the deposit of dredged material. To meet this requirement, the Ports Authority began leasing Drum Island from the Seaboard Coastal Railroad Systems, for which Holston serves as a land developer, in 1958.

Through the use of containment dikes, spillways, and drainage mechanisms, the Ports Authority dries and stores the dredged material, which is deposited alternatively on Drum and Daniel Islands approximately twice a year. Both islands are necessary to the maintenance of this disposal system, as the dredged material must be allowed to dry and consolidate for a period of time before additional deposits can be made to either island facility.

In November, 1981, the railroad advised the Ports Authority that Drum Island, which had previously been rented for $2,000 per year, would no longer be available for dredge material deposits, as the property had been leased to another company which had agreed to pay $1.50 per cubic yard of disposal. The Ports Authority then studied the situation, and, in December of 1981, authorized the acquisition of Drum Island by eminent domain, estimating the market value of the island at $101,000.

After unsuccessfully attempting to lease the Drum Island property to the Ports Authority under the same terms offered to the private company, the Railroad obtained a temporary injunction which stayed the condemnation proceedings. In March, 1982, the circuit court dissolved the injunction and dismissed the Railroad's complaint, finding the Ports Authority had acted within its authority in condemning Drum Island for the purpose of maintaining a convenient dredge material disposal site.

Appellant first argues the trial court erroneously construed S. C. Code Ann. § 54-3-150 (1976) to authorize the condemnation of Drum Island for use as a depository for material dredged from the harbor. We disagree.

For the acquiring of rights of way and property necessary for the construction of terminal railroads and structures, including railroad crossings, airports, seaplane bases, naval bases, wharves, piers, ships, docks, quays, elevators, compresses, refrigerator storage plants, warehouses *and other riparian and littoral terminals and structures and approaches thereto and transportation facilities needful for the convenient use thereof* and belt line roads and highways, causeways and bridges and other bridges and causeways . . ., the Authority may purchase the same by negotiation, or may condemn them . . . (Emphasis added).

This section was enacted to empower the Ports Authority to acquire any property necessary to the furtherance of its duty "[t]o develop and improve ... [Charleston Harbor] for the handling of water-borne commerce...." S. C. Code Ann. § 54-3-130(1) (1976). Previously, in *S. C. State Ports Authority v. Kaiser*, 176 S. E. (2d) 532, 254 S. C. 600 (1970), this Court construed § 54-3-150, then § 54-15 of the 1962 Code, to authorize the Ports Authority to condemn a building, which shared a common wall with the Authority's office building, for the purpose of insuring the protection and structural support of the Authority's building. Undoubtedly, the present facts conform more to the language of § 54-3-150 as the Drum Island facility can clearly be classified as a "riparian structure" within the context of this section. Consequently we hold the trial court correctly determined the Ports Authority could properly condemn the Drum Island facility under § 54-3-150.

Appellant also maintains the doctrine of *ejusdem generis*[1] precludes us from interpreting § 54-3-150 to govern the present case, claiming S. C. Code Ann. § 54-3-170 (1976) addresses the condemnation of property for use of waste removal depositories. We find this argument to be without merit as the latter section deals specifically with

---

[1] "General words in a statute must be construed in context and, under the doctrine of *ejusdem generis*, the meaning of [these] words may be restricted by words of specification which precede them on the theory that if the legislature had intended the general words to be used in their unrestricted sense, there would have been no mention of the particular class." *State v. Patterson*, 200 S. E. (2d) 68, 69, 261 S. C. 362, 365 (1973).

the taking of *State owned* property by the Authority, and does not apply to the condemnation of private property.

Appellant next contends S. C. Code Ann. § 28-5-10, et seq. could not provide a basis for the Ports Authority's condemnation of Drum Island, as it was not raised in the pleadings. We dismiss this exception as our previous discussion of § 54-3-150 is determinative of this issue.

Appellant's remaining exceptions are dismissed under Supreme Court Rule 23.

Affirmed.

LITTLEJOHN, C. J., and NESS, GREGORY and HARWELL, JJ., concur.